## Roberts v. Roberts

*Joan D. Mason,* for plaintiff.
*R. Charles Thomas,* for defendant.

MILLER, *P.J.,* February 5, 1991 — Defendant has filed a petition for bifurcation of the divorce from the other issues raised in this case and we now dispose of that request.

## BACKGROUND

The parties were married on June 11, 1961, were separated in January 1983 and have not lived together since then except for a brief period of about two weeks within the last few years.

On May 3, 1983 plaintiff brought this action for divorce, custody, equitable distribution, alimony, fees, costs and expenses. Even though there has been a long period of separation nothing else has been done of record until the middle part of last year. On May 31, 1990 defendant filed an affidavit under section 201(d) of the Divorce Code and an answer to plaintiff's complaint. On November 14, 1990 defendant filed an income and expenses statement and an inventory and appraisement.

Plaintiff has not filed her income and expense statement or inventory and appraisement even though they were due years ago.

The parties had five children but only one remains at home with plaintiff. They both want a divorce for there is no hope of reconciliation. Defendant lives with another woman, voices a desire to marry her and wants to start a new life.

Defendant paid the plaintiff $800 to apply on attorneys' fees years ago. He has had a support obligation (for whom was not established) and he is miserably in arrears. Whether or not there will be any attempt to recover that from his share of the marital property was never explored.

They own residential real estate and some household furnishings. It appears that the debts exceed the value of the assets. There apparently is a mortgage due and owing on the property, a loan of about $20,000 to a Mrs. Snodgrass (although verbal with no written documentation) and a loan of approximately $21,000 from people by the name of Carlson. They may owe the Internal Revenue Service back taxes for joint returns filed through 1983. Defendant may owe the Internal Revenue Service back taxes for periods since then when he was filing on his own.

Defendant is willing that economic issues be preserved. He did not indicate a willingness to waive the Dead Man's Act[1] should he die before the economic issues have been resolved.

## DISCUSSION

The Divorce Code seems to allow for a bifurcation so that a court could enter a divorce decree without resolving the other economic issues (23 P.S. §401(b.1). A strict reading of that section seems to justify bifurcation only if the court is unable to determine and dispose of the divorce and related matter *after* a master's report has been filed. Nonetheless bifurcation has been considered, sometimes granted and sometimes refused, by lower courts and appellate courts, even when there has been no master's report filed. Therefore it appears that bifurcation can occur whether or not there has been a master's hearing and report.

1. 42 Pa.C.S. §5930.

If a bifurcation were to occur and a divorce granted, the economic issues are still preserved (even if death intervenes) and the court has a right to enter orders protecting assets, rights of dependent spouses, etc. pending final conclusion of the economic issues. (23 P.S. §401(b.1)(c)(j)).

There are many advantages as well as disadvantages to a bifurcation. This includes tax advantages and disadvantages. These matters are set forth in list form in *Pennsylvania Matrimonial Practice* by Rounick, section 18:4. See also, *Wolk v. Wolk,* 318 Pa. Super. 311, 464 A.2d 1359 (1983).

We think that all matters raised in a divorce action should be resolved at one time and therefore we are not inclined to separate the issues and grant a divorce pending disposition of economic matters. However, trial courts may not establish a pro forma policy to grant or deny bifurcation requests. Trial courts are required to carefully explore and analyze the advantages and disadvantages of bifurcation on a case-by-case basis and must spell out and state the reasons for granting or denying bifurcation requests. *Wolk v. Wolk, supra; Hall v. Hall,* 333 Pa. Super. 483, 482 A.2d 974 (1984); *Mandia v. Mandia,* 341 Pa. Super. 116, 491 A.2d 177 (1985).

In one of the early appellate court decisions on bifurcation, *Tose v. Tose,* 297 Pa. Super. 592, 441 A.2d 790 (1982), the Superior Court permitted a bifurcation where a wife's substantive rights to alimony and equitable distribution were not affected.

Defendant maintains that he wants to get on with his life, and should not be held hostage to economic claims. That is not only an advantage to bifurcation but is a fact which the court must seriously consider. If this were the only factor present here we would, without further delay, bifurcate the issues joined in this case and grant the divorce.

Defendant has indicated no other advantages or reasons why we should permit bifurcation, such as tax considerations, etc. We need not discuss tax matters, pro or con.

The major disadvantages center around what happens if the defendant dies before the economic issues are resolved, and potential intervening liens. Even though the record is far from clear there is some inference that the parties may jointly owe delinquent state and federal taxes; defendant may owe delinquent state and federal income taxes for periods of time after 1983 when he filed separate returns, and defendant may have creditors who could potentially obtain intervening liens.

If defendant dies while the divorce action is pending the action abates and the rights of plaintiff, as a surviving spouse, albeit estranged, are determined by the Probate, Estate and Fiduciaries Code.[3] *Haviland v. Haviland,* 333 Pa. Super. 162, 481 A.2d 1355 (1984); *Pastuszek v. Pastuszek,* 346 Pa. Super 416, 499 A.2d 1069 (1985); *Clingerman v. Dadowski,* 513 Pa. 179, 519 A.2d 378 (1986). Plaintiff, as the surviving spouse, would be competent to testify in the proceeding to determine her elective share as a surviving spouse (20 Pa.C.S. §2209). All of this is a definite advantage to her. There is a corresponding disadvantage to defendant because under this set of facts if plaintiff is able to "outlast" him, neither he, nor his heirs after his death, will get the same economic benefit that he would get if he were to live and enjoy some equitable distribution of marital property.

If we were to bifurcate now plaintiff would be greatly disadvantaged. Although the divorce action would be abated on death, the economic issues would not abate. 23 Pa.C.S. §401(d)(1). The court would retain jurisdiction over economic issues but

---

2. 20 Pa.C.S. §101 et seq.

plaintiff, as a surviving spouse, would not be competent to testify under the Dead Man's Act. 42 Pa.C.S. §5930; *Wolk v. Wolk,* supra.

Additionally she would not be a surviving spouse and would have no right to share any portion of decedent's estate or to take an elective share.

The court could reduce the disadvantages to plaintiff on the death of defendant post-bifurcation by entering appropriate orders to protect her interests pending final resolution of the economic matters and by requiring defendant to waive the protections his personal representative would have under the Dead Man's Act, 23 Pa.C.S. §401(b.1)(c)(j). Up to this point the court could arrange bifurcation to the greater benefit of both parties and lessen most, if not all, of the disadvantages to each. *Wolk v. Wolk, supra; Tose v. Tose, supra.* But we must go further.

If the parties are divorced without a resolution of the economic issues they become tenants in common with respect to property now held as tenants by the entireties. 68 P.S. §501. A creditor of defendant could obtain an intervening lien against defendant's half-interest in marital property. *Jawork v. Jawork,* 378 Pa. Super. 89, 548 A.2d 290 (1988). Federal tax liens which extend to property rights or interests of a taxpayer, which are liens on property as determined by the law of Pennsylvania, cannot attach to entireties property unless the taxes were owed by the entireties. After divorce, when the parties hold marital property as tenants in common, taxes owed solely by defendant could then be a lien against his one-half interest in the marital property. 35 Am. Jur. 2d 20, *Federal Tax Enforcement,* section 11.

If defendant's creditors, including the IRS, obtain rights against defendant's one-half interest in assets held by tenancy in common then there may not be unencumbered assets from which plaintiff could

recover if it turns out that she is entitled to more than 50 percent of the marital property or if she is entitled to alimony pendente lite, permanent alimony, counsel fees and expenses.

The substantial potential inequities that may result, if the defendant dies or if there are intervening liens against his interest in property which cannot be completely avoided by a court order granting bifurcation, lead us to conclude that bifurcation of the issues is not proper at this time. This is not a case where defendant has already set aside substantial assets and is generously providing for plaintiff as in *Katz v. Katz,* 356 Pa. Super. 461, 514 A.2d 1374, alloc den. 527 A.2d 542 (1986).

Both parties want the divorce and far too much time passed since this suit was instituted. Defendant and, for that matter, plaintiff should have their freedom and begin new lives. We think all of the issues raised in this matter should be decided at once and should be done so quickly. We are directing plaintiff to file her income and expense statement and inventory and appraisement forthwith. Her delay over all of these years is inexcusable. She has violated the strict letter of the rules (Pa.R.C.P. 1920.31, 1920.33) as well as the purpose and spirit of the Divorce Code. We intend, in a later order when we dispose of alimony pendente lite, counsel fees and expenses, to set a strict timetable that the parties must follow to bring this matter to a completion during which they shall have some brief period of time to prepare for a hearing and a timetable by which the hearing must be concluded. This is not a case where more years will pass before economic issues are settled, *Taylor v. Taylor,* 349 Pa. Super. 423, 503 A.2d 439 (1986), for we will insist that this matter be concluded with all deliberate speed.